UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MID-AMERICA TAPING & REELING, INC., ) <br> an Illinois Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SMT CORPORATION, a Connecticut ) <br> Corporation, KIRSTEN SHARPE and TOM ) <br> SHARPE, individually as owners of ) <br> Corporation, and ROBERT LINGL, ) <br> individually, ) <br> ) <br> Defendants. ) | No. 16 C 10703 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

In an apparent attempt to gain a strategic advantage, Plaintiff Mid-America Taping & Reeling, Inc. ("Mid-America") filed suit against Defendants SMT Corporation ("SMT"), Kirsten Sharpe, Tom Sharpe (collectively, the "SMT Defendants"),[1] and Robert Lingl[2] several weeks after reaching an agreement in principle with SMT to settle SMT's claims against Mid-America and a day before SMT threatened to take legal action of its own. Mid-America claims that the SMT Defendants and Lingl violated the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, that Lingl breached a non-disclosure agreement and his fiduciary duties to Mid-America, and that SMT, Kirsten, and Lingl tortiously interfered with Mid-America's prospective economic advantage. The SMT Defendants have moved to dismiss the complaint or, alternatively, to

---

[1] SMT states that its proper name is "SMT, Corp." Similarly, the complaint misidentifies Kirsten Sharpe as "Kristen."

[2] Although an executed waiver of service appears on the docket for Lingl, *see* Doc. 6, Lingl has not filed an appearance in the case. Mid-America also has not sought a default judgment against Lingl.

transfer the case to the District of Connecticut. Because the Court does not have personal jurisdiction over the SMT Defendants, the Court dismisses Mid-America's claims against them.

## BACKGROUND[3]

### I. Allegations in the Complaint

Mid-America, a corporation owned by Barbara Pauls, manufactures, assembles, and sells taping and reeling products such as vacuum sealers, SMD covertape, SMD plastic reels, static shielding and moisture barrier bags, humidity indicating cards, and splicing supplies. It also provides services for surface mounting taping, lead forming, memory device and flash programming, baking and dry packing, and paper carrier taping. Mid-America began its operations in Illinois and then opened a facility in Florida as its business grew. According to Mid-America, only seven other corporations provide similar reeling and taping services, making the market extremely competitive.

In 1991, Mid-America hired Lingl, Pauls' brother, to manage its Illinois facility. Lingl worked for Mid-America for approximately eight years before leaving to work for SMT, a Connecticut corporation.[4] He worked at SMT until he returned to Mid-America in November 2015. Corresponding roughly to the same time Lingl worked at SMT, Mid-America saw a decrease in its revenue. According to Mid-America, after Lingl returned to work for it in November 2015, Mid-America learned that Lingl had provided SMT with Mid-America's hardware and customer lists, which allowed SMT to pursue Mid-America's customers.

---

[3] In addressing the SMT Defendants' motion to dismiss for lack of personal jurisdiction, the Court is not limited to the pleadings. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Thus, the facts in this section are taken from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Mid-America's favor. *Id.* at 782–83.

[4] In an affidavit attached to Mid-America's response, Pauls acknowledges that Lingl did not go directly from his employment with Mid-America to SMT.

## II. The SMT Defendants' Version of the Facts

The SMT Defendants present a different story. According to them, Lingl left Mid-America in 1999 to work for SND Electronics, a company unrelated to SMT, where he managed SND Electronics' tape and reel business for eight years. SND Electronics then sold its tape and reel business to an SMT affiliate in 2007, with Lingl becoming an employee of SMT's affiliate and ultimately SMT.[5] Pauls knew of Lingl's employment with SMT, frequently speaking with Lingl while he worked there. The SMT Defendants later learned that Pauls had Lingl ship her over 100 packages from SMT's tape and reel department without invoicing and openly discussed having Lingl resign from SMT and take SMT's tape and reel customer base to Mid-America. In early October 2015, Lingl put this plan into motion when he advised the Sharpes that he was resigning from SMT due to a serious medical condition and moving to Illinois for treatment. Lingl indicated that he had trained his daughter, Bethany, in all aspects of SMT's tape and reel business so that she could manage the department on her own when he left. On Lingl's recommendation, SMT promoted Bethany to head the department. But instead of leaving SMT to address health issues, Lingl took a position managing Mid-America's facility in Coconut Creek, Florida, living in a condominium that Pauls had purchased for him.

In late 2015, the SMT Defendants learned of issues with Bethany's management of SMT's tape and reel department. This led them to review the department's records, including Bethany's emails. In doing so, they found evidence that Lingl sent packages from SMT without invoices, directed SMT customers to Mid-America or other competitors even though SMT could have handled the business, and misappropriated SMT's records and used those records after resigning to solicit customers for Mid-America. The SMT Defendants also found that Lingl directed Bethany to ship SMT products to him at Mid-America's Florida facility without charge

---

[5] The affiliate dissolved in late 2011, with its assets transferred to SMT.

and then sold these products to Mid-America customers. Based on these discoveries, SMT terminated Bethany on February 23, 2016, and both Bethany and Lingl were arrested in July 2016 and charged with larceny. A number of SMT-owned customer log books were seized from Lingl's residence and Mid-America's facility in Florida.

On September 14, 2016, SMT's counsel sent a demand letter to Pauls as Mid-America's president and CEO, identifying claims it intended to assert against her and Mid-America arising out of the scheme to defraud SMT and take its property. Mid-America's counsel proposed a meeting in Connecticut to discuss resolution of the claims, which occurred on November 2, 2016. The parties reached an agreement in principle to settle the claims identified in SMT's demand letter, but Mid-America and Pauls thereafter failed to respond to SMT's counsel's attempts to memorialize the agreement. SMT's counsel indicated it would take action if it did not hear from Mid-America or Pauls by November 18, 2016. On November 17, 2016, Mid-America filed this case against the SMT Defendants and Lingl.

### III. Additional Jurisdictional Facts

The Sharpes founded SMT in 1999. Kirsten holds all of SMT's outstanding shares and serves as President and Treasurer, while Thomas serves as SMT's Vice President. Together, they manage SMT's day-to-day operations. The Sharpes do not own any property in Illinois or personally conduct any business in Illinois.

SMT's sole facility is in Newtown, Connecticut, with all of its employees working from that facility. SMT is not registered to do business in Illinois and does not manufacture or assemble products in Illinois. It has occasionally purchased inventory from Illinois suppliers or vendors, including Mid-America. In 2015, SMT purchased $7,541.05 of products from Mid-America. That number dropped to $3,781.07 in 2016. SMT's total purchases from Illinois

vendors, excluding Mid-America, totaled $24,002.57 in 2015 and $30,967.62 in 2016, which represented less than 1% of its total purchases each year. Only SMT's purchases from Mid-America related to the tape and reel business. As for sales, between 2012 and 2015, SMT made less than 1% of its sales to Illinois customers, while in 2016 approximately 3.4% went to Illinois, with the vast majority of the Illinois sales composed of components and testing services to one customer. According to the SMT Defendants, SMT has not sold tape and reel products or services to Illinois customers. SMT also does not directly market or advertise in Illinois or target potential customers in Illinois, although it does maintain a website accessible from Illinois.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue*, 338 F.3d at 782. If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

**ANALYSIS**

Among other arguments, the SMT Defendants contend that the Court does not have personal jurisdiction over them. In a federal question case like this one where the statute does not authorize nationwide service of process or, alternatively, in a diversity case, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1046–47 (N.D. Ill. 2015). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). To the extent the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable and thus a single inquiry suffices. *Id.*; *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013) ("In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* [*v. Elwood*, 565 N.E.2d 1302, 1315, 141 Ill. 2d 244, 152 Ill. Dec. 384 (1990)] guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice."). In order to satisfy the Due Process Clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he

should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1984).

Personal jurisdiction comes in two forms: general and specific. Mid-America claims that this Court has both general and specific jurisdiction over the SMT Defendants. The Court addresses these two forms of personal jurisdiction to determine whether the SMT Defendants have sufficient contacts to support exercising jurisdiction over them.

**I.     General Jurisdiction**

General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011); *see also Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). Typically, corporations are found to be at home only in their states of incorporation and where they have their principal place of business. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Although Illinois is neither the state of incorporation or principal place of business for SMT, Mid-America persists in arguing that the Court has general jurisdiction over the SMT Defendants.

Specifically, Mid-America contends that the SMT Defendants have continuous and systematic business contacts with Illinois because SMT purchases products from Illinois suppliers and makes sales to Illinois customers. But the only evidence of SMT's business relationship with Illinois demonstrates that its contacts with this state are minimal, with the

7

amount of products SMT buys and sells amounting to a negligible portion of its business. This small amount of business does not allow SMT to be considered "constructively present" or "at home" in Illinois. *See id.* at 698–99 (finding insubstantial and episodic contacts with Illinois insufficient to establish that defendant had "continuous and systematic contacts" so as to make it "at home" in that forum); *Nicholson v. E-Telequote Ins., Inc.*, No. 14-cv-4269, 2015 WL 5950659, at *4 (N.D. Ill. Oct. 13, 2015) ("[D]oing 10 percent of your business in Illinois does not make a corporation 'at home' in Illinois."). Although Mid-America alleges that SMT has solicited some of Mid-America's customers, SMT indicates that it has not sold any tape and reel products or services to Illinois customers, belying any suggestion that any alleged solicitation provides the Court with general jurisdiction over SMT. Nor can the fact that Lingl worked for SMT and apparently used a Mid-America tool while working for SMT provide general jurisdiction, where Lingl was not an Illinois resident at the time he worked for SMT and he, not the SMT Defendants, allegedly used the tool at issue. Finally, Mid-America has not presented anything to support the Court's exercise of general jurisdiction over the Sharpes, particularly where all evidence suggests that they observed corporate formalities in running SMT. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (ownership or affiliation with a corporation is not a sufficient minimum contact to support jurisdiction over an individual); *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 909 (N.D. Ill. 2003) (courts do not impute the contacts of the corporation to the owner where there is no basis alleged or demonstrated for veil-piercing). Thus, the Court lacks general jurisdiction over the SMT Defendants.

## II. Specific Jurisdiction

Alternatively, Mid-America argues that the Court has specific jurisdiction over the SMT Defendants. The Court has specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). Here, the Court cannot conclude that the SMT Defendants directed their actions at Illinois and that Mid-America's alleged injuries arise out of these activities. *See Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012) (specific personal jurisdiction requires some nexus between the forum-related conduct and the underlying cause of action). The mere allegation that Mid-America suffered injury in Illinois does not subject the SMT Defendants to jurisdiction here; additional allegations tying the SMT Defendants' conduct to Illinois and Mid-America's injuries are required. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014).

Mid-America states that the SMT Defendants admit to purposefully availing themselves of Illinois, but the SMT Defendants have made no such admission. Although Mid-America alleges that SMT has solicited Illinois customers, the SMT Defendants present unrebutted evidence to the contrary, denying directing any activities toward Illinois related to Mid-America's claims. *See Purdue*, 338 F.3d at 783 (where the defendant submits evidence to oppose jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence to support the exercise of jurisdiction). SMT admits to purchasing a small amount of products from Mid-America over the past two years, but Mid-America does not claim to have been injured by these purchases. And SMT disclaims any other involvement with Illinois in the tape and reel business. *See Griffith Labs. Inc. v. Kancor Ingredients Ltd.*, No. 15 C 4391, 2017 WL

514188, at *4 (N.D. Ill. Feb. 8, 2017) (sales of a different product in Illinois did not allow court to exercise specific personal jurisdiction over defendant because specific jurisdiction requires litigation-specific conduct in the forum state). The SMT Defendants' only other connection to Illinois appears to have been manufactured by Lingl in shipping SMT products to his sister at Mid-America without the SMT Defendants' knowledge. But the fact that Lingl, while working for SMT, acted in collusion with Mid-America to send SMT products without invoices to Illinois cannot subject the SMT Defendants, who were unaware of Lingl's actions, to jurisdiction in Illinois. *See Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801 (relevant contacts cannot be those "between the plaintiff or other third parties and the forum"); *Felland*, 682 F.3d at 674–75 (to show purposeful direction in tort action, plaintiff must show that conduct was expressly aimed at forum state "with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state").

Nor do the factors Mid-America references support specific jurisdiction. That Lingl may have communicated with customers in other states says nothing about SMT's connection to Illinois or how those communications give rise to Mid-America's claims against the SMT Defendants and its injuries in Illinois. Maintaining a passive or even interactive website accessible in Illinois cannot on its own create specific jurisdiction where nothing suggests that SMT's website specifically targets Illinois residents. *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."). And finally, although Mid-America at one time employed Lingl, by the time he became an SMT employee, he had lived in Connecticut for some time. Any connection to Illinois stemming from SMT's employment of

10

Lingl based on his previous work for Mid-America in Illinois is too attenuated to subject the SMT Defendants to personal jurisdiction here.

Because Mid-America has failed to meet its burden to establish that the Court has either general or specific jurisdiction over the SMT Defendants, the Court grants the SMT Defendants' motion to dismiss the complaint for lack of personal jurisdiction.[6]

## CONCLUSION

For the foregoing reasons, the Court grants in part SMT Corporation, Kirsten Sharpe, and Thomas Sharpe's motion to dismiss the complaint, or in the alternative, to transfer to the District of Connecticut [23]. The Court dismisses SMT Corporation, Kirsten Sharpe, and Thomas Sharpe from the case without prejudice for lack of personal jurisdiction.

Dated: May 15, 2017

_____
SARA L. ELLIS
United States District Judge

---

[6] Because the Court dismisses the complaint on the grounds of lack of personal jurisdiction, it does not address the SMT Defendants' alternative bases for dismissal.